IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| JERRY LEE HUNTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 11-G-1557-M |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION

The plaintiff, Jerry Lee Hunter, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether he has a severe impairment;

    (3)    whether his impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform his past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

    In the instant case, ALJ Jerome L. Munford determined the plaintiff met the first two tests, but concluded that while the plaintiff's impairments of "mild obesity, degenerative disk disease of the back and bipolar disorder" are "severe," they did not meet or medically equal a listed impairment. [R. 29]. The ALJ found that the plaintiff "retains the residual functional capacity to perform unskilled light work . . . which allows no more than occasional bending, stooping, and climbing; primarily work with or around things, instead of the general public; no driving; and work instructions primarily given orally, as opposed to detailed, written instructions." Id. Accordingly, the ALJ found the plaintiff was not disabled within the meaning of the Act.

### THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

    It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically

asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers within the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the  Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In <u>Varney v. Secretary of Health and Human Services</u>, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. <u>Id</u> at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." <u>Id.</u> If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As <u>Varney</u> recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. <u>Id.</u> This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff was 42 years old at the time of the ALJ's decision. ALJ Munford found the following severe impairments: mild obesity, degenerative disk disease of the back, and bipolar disorder. A. Bartow Ray, Jr., Ph.D., a licensed psychologist, performed a consultative psychological examination at the behest of the Commissioner on February 24, 2009. [R. 282-286]. Dr. Ray conducted a comprehensive psychological evaluation, including mental status examination and interview, and concluded with the diagnosis that plaintiff suffers from: (1) bipolar I disorder, most recent episode depressed, moderate; (2) pain disorder associated with both psychological

5

factors and a general medical condition; and (3) panic disorder with agoraphobia.[1] [R. 284]. Dr. Ray assessed the plaintiff's current GAF at 45,[2] with 55 being the highest level in the past year. Dr. Ray conducted testing:

> The Mini-Mult (abbreviated version of the MMPI) was administered to the patient. The results of the Mini-Mult are valid and remarkable. The validity scales configuration indicates that the patient addressed the test items in a [sic] honest and straight forward fashion. The F-Scale was elevated to a T = 68 is somewhat suggestive that psychotic processes are possible. The highest elevations were evident on the schizophrenia (T=105)

---

[1] Dr. Ray also diagnosed low back pain, bilateral wrist pain, bilateral leg and foot pain, bilateral carpal tunnel syndrome, and impaired vision in the left eye, all by patient report. [R. 285].

[2] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 30 (4th Edition) ("DSM-IV"). A GAF of 41-50 indicates: "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 32. Several courts of appeal have, in unpublished or nonprecedential opinions, considered the impact of a claimant's GAF score of 50 or below. The courts generally find that a GAF score of 50 or below is not in and off itself determinative of disability. See Hillman v.Barnhart, 48 Fed Appx. 26, 2002 WL 31260962 at * 3, n.1(3rd Cir. 2002)(not precedential)(noting that a GAF of 50 would indicate a claimant could perform some substantial gainful activity); Rutter v. Comm'r of Soc. Sec., 91 F.3d 144 (Table), 1996 WL 397424 at *2 (6th Cir. 1996)(unpublished opinion)(exclusive reliance on GAF score not appropriate); Roemmick v. Shalala, 59 F.3d 176 (Table), 1995 WL 299894 at *2, n.1 (9th Cir. 1995)(noting that an inability to work is only one example of the level of adaptation meriting a GAF of 40); Seymore v. Apfel, 131 F.3d 152 (Table), 1997 WL 7555386 at *2 (10th Cir. 1997)("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work."); Stalvey v. Apfel, 242 F.3d 390 (Table), 2001 WL 50747 at *2 (10th Cir. 1999)("The GAF is not an absolute determiner of ability to work."). But cf. Lloyd v. Barnhart, 47 Fed. Appx. 135, 2002 WL 31111988 at *1, n.2 (3rd Cir. 2002)(not precedential)(noting that a vocational expert at the administrative hearing testified that a GAF of 50 or lower would indicate claimant would not be able to keep a job).

6

>and depression (T=101) scales, yielding a[n] eight-two profile. The patient's Mini-Mult profile is suggestive of schizoaffective disorder, major depression with psychotic features, or bi-polar disorder. The results of the Mini-Mult are consistent with presenting symptoms.

[R. 284]. Dr. Ray continued:

>Mr. Hunter suffers from two significant psychological disorders, either of which can be disabling. Specifically, he suffers from "Bipolar I Disorder, Depressed Moderate" and "Panic Disorder with Agoraphobia". Either disorder can cause him significant distress, and immobilize him. Appropriate psychological treatment is highly recommended. Further, the employment of appropriate psychotropic medication is deemed as necessary and therefore referral to a psychiatrist is viewed as essential. It is alo recommended that those individual's [sic] involved in Mr. Hunter's continuing care be vigilant for signs of suicidal thought or intent.
>
>Furthering of Mr. Hunter's education is viewed as necessary for the individual, though it is highly improbable due to the nature of his disorders and the extent of his educational deprivation (i.e., 6th grade education).
>
>This psychologist is of the opinion that Mr. Hunter is totally disabled due to the nature of his psychological disorders, his physical impairments, and educational deprivation. Further, it is my opinion that Mr. Hunter's disability is highly likely to be chronic in nature.

[R. 285-286].

The ALJ chose to give little weight to the opinion of Dr. Ray:

>Dr. Ray did not review any of claimant's medical records, but rather based his opinion on information given to him by the claimant and the mini MMPI he administered. (Exhibit 7F, p. 4). Reasonably, the claimant's impairments are such that they could create some limitations, but not to the degree alleged by Dr. Ray, which are unsupported by the great weight of the medical evidence of record.

[R. 27].

The present case bears a resemblance to the situation in <u>Wilder v. Chater</u>, 64 F.3d 355 (7th Cir. 1995).  In that case the court was faced with an ALJ who had improperly ignored the opinions of a consulting psychiatrist who was appointed by the Commissioner.  The <u>Wilder</u> court observed:

> We are led to consider with a degree of suspicion the administrative law judge's decision to go against the <u>only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge himself</u> to advise on Wilder's condition. . . . The psychiatrist's testimony, though conclusional (but then no one pressed him to elaborate the grounds for his conclusions), was the only direct testimony concerning the critical issue of the date of onset of Wilder's disabling depression.  Severe depression is not the blues.  It is a mental illness; and <u>health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it</u>.  The question what stage a physical or mental illness had probably reached some years before it was first diagnosed is a medical question, and <u>the uncontradicted evidence of the only disinterested expert to opine upon it is entitled to considerable weight</u>.  We do not say conclusive weight;  but the facts on which the administrative law judge relied to contradict that evidence are singly and together unimpressive.

<u>Id.</u> at 337 (emphasis added)(citations omitted).

An ALJ is not allowed to make medical findings or indulge in unfounded hunches about the claimant's medical condition or prospect for improvement.  He is not free to base his decision on such unstated reasons or hunches.  Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in  <u>Marbury v. Sullivan</u>, as follows:

> An ALJ sitting as a hearing officer <u>abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians</u>:  "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary."  <u>Lamb v. Bowen</u>, 847 F.2d 698, 703 (11th Cir.

>1988). . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private or personal capacity*;  however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.
>
>>Because the ALJ made no factual findings supporting an inference that the treating physicians were incompetent or otherwise failed to perform their duties in a professional manner, the ALJ's decision not to credit seriously the medical diagnoses indicating psychogenically caused seizures cannot stand. . . .
>
>>Although Social Security disability benefits must be reserved only for those who qualify to receive them, an ALJ may not arrogate the power to act as both judge and physician. The ALJ in this case clearly exceeded his legal authority by allowing his personal views regarding the non-physical source of Marbury's seizure disorder to interfere with his responsibilities to administer fairly the Social Security disability programs. On remand, let us hope that the ALJ refrains from playing doctor and instead satisfies himself with merely serving as a judge.

957 F.2d 837, 840-41 (11th Cir. 1992)(italics in original)(emphasis added).

In the present case, it is apparent that ALJ Munford has abused his discretion by substituting his own medical judgments for those of the Commissioner's own consulting psychologist, Dr. Ray.  At the hearing, the VE testified that given the ALJ's stated residual functional capacity for the plaintiff, he could perform the requirements of several light or sedentary jobs, such as assembler, hand packer and inspector/checker.  [R. 108].  The plaintiff's attorney then questioned the VE:

>Q:  Yes, sir.  Mr. Long, have you seen what is marked as – it's Dr. Ray's psychological evaluation, which is marked at 7F?
>
>A:  Yes, sir.

9

Q: Okay. And you've also – you've already stated before what a GAF was. If we assume that Dr. Ray's classification of the Claimant is correct, and he states that the Claimant has a GAF of 45, what kind of work would that – be available for the Claimant?

A: That would indicate that the Claimant would be too psychologically impaired to function in competitive employment.

Q: Would that include light jobs and sedentary?

A: Preclude all work.

[R. 115].

The court concludes that substantial evidence does not support the ALJ's decision to give little weight to the opinion of the Commissioner's consulting psychologist. Although Dr. Ray is not the plaintiff's treating psychologist, he is a specialist in the field of psychology, and his opinion is entitled to more weight in this area.[3] The thoroughness of his report and supporting testing also entitles it to greater weight.[4] It was unreasonable for the ALJ to ignore it.

## CONCLUSION

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled

---

[3] "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist." 20 C.F.R. § 404.1527(d)5). In addition to being a licensed clinical psychologist, Dr. Ray is also a Senior Disability Analyst and Diplomate, a Diplomate in Medical Psychology, a Diplomate in Psychological Disabilities Evaluation, and a Diplomate in Rehabilitation Psychology. [R. 286].

[4] See 20 C.F.R. § 404.1527(d)(3)(well supported opinions entitled to more weight).

within the meaning of the Social Security Act.  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

  DONE and ORDERED 20 June 2012.

_____<br>
UNITED STATES DISTRICT JUDGE<br>
J. FOY GUIN, JR.